## In re SOUTH STATE STREET BLDG. CORPORATION.

### KEELE v. GOLD.

Nos. 6883–6885, 6901, 6906, 6907.

Circuit Court of Appeals, Seventh Circuit.

July 13, 1939.

Harold M. Keele, of Chicago, Ill., for appellant.

Pennish & Rashbaum, of Chicago, Ill., and Dewey Montgomery, of Bloomington, Ill. (Lewis E. Pennish and Lawrence Kasakoff, both of Chicago, Ill., of counsel), for petitioning creditors.

Chester T. Lane, Gen. Counsel, Securities and Exchange Commission, Joseph L. Weiner, and Samuel H. Levy, all of Washington, D. C., W. McNeil Kennedy and Robert T. Wright, both of Chicago, Ill., and William A. Bassett, Jr., of Washington, D. C., for Securities and Exchange Commission.

Harold Woodward, of Chicago, Ill., for Ben Gold, trustee in bankruptcy.

Joseph Schwartz, of Chicago, Ill., for Fred E. Hummel, indenture trustee.

Herbert M. Lautmann, I. E. Ferguson, and Henry L. Kohn, all of Chicago, Ill., for Bondholders' Committee.

Morris Blank and Theodore D. Kahn, both of Chicago, Ill., for certain bondholders.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This case on appeal is a consolidation of several appeals, all of which present the same question. The appeals are from orders of the District Court denying petitions of petitioner-appellant to quash, or in the alternative, to amend two subpoenas duces tecum which were issued out of the District Court and directed to and served upon the petitioner and the City National Bank and Trust Co. of Chicago, respectively.

The subpoenas were issued in proceedings for the reorganization of South State Street Building Corporation under Chapter 10 of the Federal Bankruptcy Act.[1] The debtor's answer to the petition for reorganization neither admitted nor denied the material allegations but admitted that there was immediate need for relief under Chapter 10 of the Federal Bankruptcy Act. The District Court approved the creditors' petition, appointed a trustee, and thereafter entered an order referring the matter generally to a special master. Thereafter the District Court entered a further order authorizing and directing the reorganization trustee, and the successor trustee, under a certain trust indenture, to conduct an examination and investigation into the affairs of the debtor as provided for in Section 167 of Chapter 10. The matter was referred to the special master with full power to subpoena witnesses, books and records of the debtor, take the testimony under oath of the directors and officers of the debtor, of Sol H. Goldberg, and of any other witnesses concerning the acts, conduct, property, liabilities and financial condition of the debtor, the operation of the debtor's business, and all other matters relevant to the proceedings and for the formulation of a plan for the reorganization of the debtor. Pursuant to the order of reference, and at the instance of the trustee, subpoenas duces tecum were served upon the petitioner-appellant and City National Bank and Trust Company requiring the production of books and records of the Sol H. Goldberg Properties Trust and of Sol H. Goldberg, the debtor's sole stockholder and active manager, and who had personally guaranteed payment of the debtor's bond issue. Petitioner's motions to quash the subpoenas duces tecum were overruled. The District Court found that information as to the personal assets, liabilities, net worth and financial responsibility of Sol H. Goldberg were "relevant and pertinent to" and bore upon "the acts, conduct, property, liability, financial condition of the debtor corporation, the operation of its business, the desirability of the continuance thereof, and other matters relevant to the proceedings and to the formulation of the plan of reorganization of the debtor."

[1] 11 U.S.C.A. § 567, 52 Stat. 890.

It is agreed that the authority of the District Court for the issuance of the subpœnas duces tecum in question must be found in the provisions of Section 167 of the recently enacted Federal Bankruptcy Act, if any such authority exists.

The following provisions of Section 167 are pertinent to the foregoing contention:

"The trustee upon his appointment and qualification—

"(1) shall, if the judge shall so direct, forthwith investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge;

"(2) may, if the judge shall so direct, examine the directors and officers of the debtor and any other witnesses concerning the foregoing matters or any of them;

"(3) shall report to the judge any facts ascertained by him pertaining to fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate;

\* \* \*

"(5) shall, at the earliest date practicable, prepare and submit a brief statement of his investigation of the property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, in such form and manner as the judge may direct, to the creditors, stockholders, indenture trustees, the Securities and Exchange Commission, and such other persons as the judge may designate \* \* \*."

An examination of the foregoing provisions of Section 167 of the Bankruptcy Act, as amended, discloses that the amended act places upon the trustee a primary responsibility, and corresponding duties, in respect to the reorganization proceedings to a far greater extent than was contemplated under Section 77B, 11 U.S.C.A. § 207. If the judge shall so direct, the trustee must investigate not only the property, liabilities, financial condition of the debtor, but also the acts, conduct, and the operation of its business with a view of determining the desirability of its continuance; and in addition the trustee is required to investigate "any other matter relevant to the proceeding or to the formulation of a plan." Under the direction of the judge

he has authority to examine directors and officers of the debtor "and any other witnesses concerning the foregoing matters or any of them." One of the objects of the investigation is to determine whether there are any facts "pertaining to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate." The purpose of the proposed investigation is not only to enable the trustee to inform the judge in respect to the property, liabilities and financial condition of the debtor, the operation of its business and the desirability of continuance thereof, but also to give the creditors, stockholders, indenture trustees, the Securities and Exchange Commission and such other persons as the judge may designate, the benefit of all information acquired by the trustee. It is evident that the proper performance of the duties of the trustee under the amended act requires a comprehensive and searching investigation into all phases of the business affairs and operations of the debtor corporation and makes necessary the exercise of a much broader authority by the District Court and the trustee than was called for under Section 77B. The language of Section 167 of the amended act reveals a legislative intent to confer the necessary authority.

The scope of the investigation in any particular reorganization proceeding which the District Judge properly can authorize must depend upon the preliminary showing of facts. The situation in the instant case which was the basis of the court's issuance of the subpœnas duces tecum may be summarized as follows: Goldberg promoted the organization of the debtor corporation, received the entire issue of its stock, and guaranteed a bond issue of the corporation. As a part of the promotion Goldberg contracted to purchase a leasehold interest under a lease from the Board of Education of the City of Chicago and arranged for the construction of a building on the property, which building, prior to the incorporation, had been leased to a tenant at a rental of $208,000 a year plus a percentage of sales. He arranged for the financing of the debtor corporation, prior to its organization, through a $1,100,000 bond issue and a security deposit of $208,000 made by the sub-tenant. Goldberg continued to control and conduct the business operations of the debtor as one of his personal business ventures and not as the operations of a separate corporate entity. The officers and directors of the debtor corpora-

tion, other than Goldberg, were at all times employees of other corporations in which Goldberg was interested, and they received no compensation for their services to the debtor. The cash resources of the debtor were handled by Goldberg in his own name and deposited in his bank accounts from the organization of the debtor in 1928 until approximately January, 1931. Between 1931 and 1935 all the cash assets of the debtor were deposited with the cash assets of "other real properties" which "had been acquired by persons or corporations other than the debtor and in which debtor had no interest," the cash assets being deposited "in a special bank account known as 'Sol H. Goldberg Special Account,' in which Goldberg never deposited his own funds." The information available to the court indicated a possible liability to the debtor by reason of Goldberg's transactions with the debtor's funds, of approximately $260,000.

■ Petitioner urges that under the decisions in Re Diversy Building Corporation[2] and In re Nine North Church Street,[3] the bankruptcy court is without jurisdiction to affect the guaranty of the bond issue, and, consequently, that the existence of the guaranty affords no cause for investigation of the financial condition of the guarantor. We express no opinion on the question of the bankruptcy court's authority to deal with the guaranty in a plan of reorganization; but apart from that question we are of the opinion that the guarantor's ability to meet his obligation under his guarantee bears a direct and vital relationship to the question of whether there should be a plan of reorganization formulated. If Goldberg is amply able to discharge his obligation on his guaranty, there would be no actual need for reorganization since the bondholders could procure prompt payment of principal and interest; and upon the payment, with or without suit, Goldberg would become subrogated to the rights of the bondholders, and, being the only stockholder, he would be the sole legal and beneficial owner of the corporate business. Under such circumstances the trustee would not be justified in recommending a plan of typical reorganization involving changes in, or modifications of, the outstanding securities. Any reorganization plan which involves extension of time of maturity of bonds, or other material changes, assented to by the bondholders, necessarily would create serious questions respecting the rights of the bondholders against the guarantor; and in order adequately to discharge his duty of making a recommendation to the bondholders respecting the advisability of adopting a plan of reorganization, the trustee must have reliable information as to the financial responsibility of the guarantor of payment of the bonds. Goldberg voluntarily made his financial worth a part of the assets of the corporation for purposes of the corporation's discharge of its debt to the bondholders, and he is in no position to interpose objections to a reasonable investigation into his financial worth.

On the face of the information before the court there is reasonable ground to believe that Goldberg, through his control and use of the funds of the corporation, and by reason of the intermingling of his personal assets and the assets of the corporation, has become indebted to the corporation in the sum of approximately $260,000. This situation justifies an examination into his books and accounts for the purpose of determining whether there is substantial basis in law for a recovery and whether his financial condition would justify the conclusion that there could be substantial recoupment for the debtor. Also, Goldberg's commingled control and handling of his personal business affairs and cash assets and those of the debtor corporation bore an intimate relationship to the management and operation of the debtor's business for several years and that situation calls for an investigation into the books and accounts of Goldberg's personal business affairs and financial transactions to the extent, at least, that such affairs and transactions would throw light on the conduct and operation of the debtor's business.

■ Petitioner-appellant, as stated in his brief, "freely admits that all books, records and documents which reflect transactions between the debtor and Sol H. Goldberg are pertinent and relevant to the investigation and should be produced without argument." And in fact petitioner delivered to the trustee or his attorney the personal books, records and documents, or photostatic copies thereof, which reflected the transactions of Goldberg with the debtor; and appellant's contention is that the scope of the subpœnas duces tecum should be

---

[2] 7 Cir., 86 F.2d 456.      [3] 2 Cir., 82 F.2d 186.

limited to the foregoing. We are of the opinion that the scope of the subpœnas should not be so limited in view of Goldberg's voluntary intermingling of his private business affairs with the business affairs of the debtor, and in view of the further fact that Goldberg has, in effect, made his personal financial worth an asset of the debtor as between the debtor and bondholders. It does not follow, however, as petitioner seems to apprehend, that the court should permit an examination of all the personal books, records and documents of Goldberg, or all of the books of the City National Bank and Trust Company reflecting Goldberg's transactions, "regardless of the period of time covered thereby or of the scope and nature of the transactions reflected therein." The petitions directed to the District Court sought to limit the investigation to transactions between Goldberg and the debtor and, as so limited, properly were denied. The District Court, upon an adequate showing, can limit the scope of the examination and investigation under the subpœnas to such matters, including the time element, as throw light on transactions which have a substantial relation to the question presented by the proceedings and to the formulation of a plan of reorganization of the debtor. We are of the opinion that the court correctly found that documents containing information as to the assets, net worth and general financial condition of Sol H. Goldberg were relevant and pertinent to and bore upon "the acts, conduct, property, liabilities and financial condition of the debtor corporation, the operation of its business, the desirability of the continuance thereof, and other matters relevant and pertinent to the proceedings and to the formulation of a plan of the reorganization of the debtor." But the details of the actual examination should be directed to matters reasonably calculated to enable the trustee to form a sound business judgment as to the present net worth and general financial responsibility of Goldberg. The same comment applies to the details of the investigation of the personal books, records and documents for the purpose of obtaining information respecting the personal transactions of Goldberg which involved assets of the debtor corporation and affected its management and business operations.

■ Petitioner-appellant also urges that forced compliance with the subpœnas duces tecum would constitute unreasonable search and seizure in violation of the Fourth Amendment of the Constitution, U.S.C.A. Appellee relies upon the case of Hale v. Henkel, [4] and especially upon the statement of the court on page 76, 26 S.Ct. on page 379, 50 L.Ed. 652.

The City National Bank and Trust Company does not claim any immunity and all records which it is required to produce are its own records, and petitioner-appellant cannot assert any immunity which the bank may have under the Fourth Amendment, either for the bank or in his own right. Assuming that the doctrine of the Hale case, which involved a grand jury investigation, applies to the present proceeding which is strictly civil, we are of the opinion that the facts of the instant case take it outside the scope of the doctrine of the Hale case. The Supreme Court pointed out in its opinion in that case that the production of all books and papers and documents called for would make it impossible for the corporation in question to carry on its business, and that the mass of material required was not shown to be necessary in the prosecution of the case. But the court also stated that "doubtless many, if not all, of these documents may ultimately be required, but some necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of those companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers."

There is nothing in the record to indicate that the production of the documents called for in the instant case would interfere with the private business transactions of Goldberg, and certainly not of the petitioner against whom the subpœnas duces tecum were directed. Furthermore, as indicated in the course of our opinion, there was before the District Court evidence to show the materiality of the documents in question.

■ The Securities and Exchange Commission suggests in its brief that a serious question exists as to petitioner's status to challenge the validity of the subpœnas. Keele's only personal interest in this matter is whatever interest he has as cus-

---

[4] 201 U.S. 43, 26 S.Ct. 370, 380, 50 L. Ed. 652.

todian of the documents. The subpœnas were served at a time when it was impossible to obtain service of process upon Goldberg. Petitioner petitioned to quash the subpœnas pro se, as attorney in fact for Goldberg. The Commission suggests that Goldberg personally should have raised the question of the scope of the subpœnas and the constitutional protection of the Fourth Amendment. Certainly, as a general proposition, the Commission's suggestion is sound. But the District Court found that the petitioner, Harold M. Keele, was the agent of Sol H. Goldberg for the purpose of accepting the delivery of and safely keeping certain of the personal books, records, documents and ledgers belonging to Sol H. Goldberg, and that the said Harold M. Keele as agent of Goldberg in the manner "and for the purposes aforesaid, had and has such an interest in the personal books, records, documents and ledgers belonging to Sol H. Goldberg and delivered to the said Harold M. Keele, as aforesaid, and required to be produced by him, as aforesaid, by the aforesaid subpœnas duces tecum, as legally entitles him to petition this Court for the quashing of the aforesaid subpœna duces tecum." The correctness of the foregoing finding has not been questioned, and in the absence of any objection to it below, or on appeal, we assume its correctness. It furnishes sufficient evidence of petitioner's appealable interest.

We conclude that the orders of the District Court should be affirmed, and they are affirmed.