**COMMITTEE FOR HOLDERS OF CEN-TRAL STATES ELECTRIC CORPORA-TION 7% CUMULATIVE PREFERRED STOCK v. KENT et al.**

**In re CENTRAL STATES ELECTRIC CORPORATION.**

No. 5227.

Circuit Court of Appeals, Fourth Circuit.

June 12, 1944.

Thomas C. Egan, of Philadelphia, Pa. (David J. Mays, of Richmond, Va., Harry Reiss Axelroth, of Philadelphia, Pa., Francis E. Walter, of Easton, Pa., and Tucker, Bronson, Satterfield & Mays, of Richmond, Va., on the brief), for appellant.

Homer Kripke, Asst. Sol., Securities & Exchange Commission, of Philadelphia, Pa. (Roger S. Foster, Sol., Arnold Ginsburg, Atty., Louis Loss, Sp. Counsel, and Edmund H. Worthy, Atty., Securities & Exchange Commission, all of Philadelphia, Pa., on the brief), for Securities & Exchange Commission.

Stuart G. Christian, of Richmond, Va., for appellees.

Leslie Craven, of New York City (Charles S. Valentine, of Richmond, Va., Wilkie, Owen, Otis, Farr & Gallagher, of New York City, and Denny, Valentine & Davenport, of Richmond, Va., on the brief), for Committee for Holders of Central States Electric Corporation Debentures.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal in proceedings instituted under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., for the reorganization of the Central States Electric Corporation, an investment company. The trustees appointed under the provisions of Chapter X filed a report of an investigation which they had conducted pursuant to sec. 167 of the Bankruptcy Act, in which they pointed out probable liability on the part of certain officers, directors and stockholders of the corporation but recommended that no suits be instituted on that account, on the ground that recovery was barred by the statutes of limitations of the states where the parties liable were resident. A committee of preferred stockholders filed petition, in which the Reeve Committee of debenture holders joined, asking for a more complete investigation and report under section 167 than had been made by the trustees, or, in lieu thereof, for the appointment of an examiner to make such investigation and report and for an examination pursuant to section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, of the persons against whom probable liability had been or should be disclosed.

In the District Court and in this Court, the Securities and Exchange Commission supported the petitions asking further investigation and examination and a committee of debenture holders opposed the petitions and asked confirmation of the trustees' report. The District Judge confirmed the report and denied the petitions, saying:

"* * * as I see the matter, the question before the Court is this: Is the Court justified in incurring necessarily large expenditures of money in making investigations and instituting and prosecuting suits to be paid out of money which, under the existing set-up, is necessarily earmarked for payment to bondholders? On the record here there can be but one answer to that question and that answer is in the negative. Therefore an order may be presented confirming Trustees' Report No. 16, denying the prayer for relief contained in the Petition of the Committee for the Holders of Central States Seven Per Cent Cumulative Preferred Stock, and denying the relief prayed for in the petition of said committee for an order under section 21, sub. a of the Bankruptcy Act."

686

The report filed by the trustees shows that the controlling interest in the debtor corporation was owned by one Harrison Williams and that the corporation was used by him in the purchase and sale of stocks in stock market manipulations, which no one here attempts to justify. Between September 1929 and September 1943, the assets of the corporation shrank from $350,000,000 to approximately $11,000,000, against which it had outstanding approximately $20,000,000 of debentures. $21.000,-000 of preferred stock and $10,000,000 of common stock. The record is replete with evidence of dealings between the debtor corporation and other corporations owned by Williams; and the trustees have reported three transactions as to which there is shown probable liability on the part of Williams and other corporate officers on account of such dealings in the amounts of $418,000, $289,000 and $3,425,000 respectively. The petition filed by the committee of preferred stockholders and supported by the Reeve Committee points out many other transactions as to which liability on the part of Williams and other officers and directors is asserted either on account of dealings had with the corporation or on account of losses sustained as a result of manipulations in which they were engaged. The Securities and Exchange Commission points out eight transactions, in addition to three reported by the trustees, which it says should be thoroughly investigated.

It appears that the investigation made by the trustees as the basis of their report was confined to an examination of the debtor corporation's books with the aid of a former employee of debtor, who had acted as proxy for Williams and had represented his interests at corporate meetings, to an examination not under oath of some of its former officers and directors, and to a study of certain evidence with respect to its dealings taken by the Securities and Exchange Commission as a basis for remedial legislation. There was no examination of the books of affiliated corporations with which dealings had been had by debtor, nor was there any examination of Williams or other officers of the corporation under oath for the purpose of establishing a basis of liability. There was not even a demand on Williams that he reimburse the corporation for the losses sustained as a result of the transactions set forth in the report of the trustees.

■ It is unnecessary to discuss in detail the transactions as to which liability is asserted; and it is undesirable to do so because of the prejudicial effect that such discussion might have on any litigation that might be instituted to enforce such liability. It is sufficient to say that we think it clear that the preferred stockholders and the Reeve Committee of debenture holders were entitled to the relief that they asked. The great losses sustained by the corporation, the gross mismanagement shown, the clear abuse of power by corporate officers in contracts made for and with the corporation, the recommendation of the governmental agency charged with the supervision of matters of this sort,—all of these called for an investigation of the most complete and thorough-going character, with opportunity to examine under oath those who had knowledge of the corporation's affairs and with institution of suits for recovery where probable liability had been shown, to the end that all the processes of discovery provided by law might be fully used. This requirement was not met by the sort of examination which the trustees conducted. The circumstances demand a thorough examination by a disinterested expert who has had no connection with any of the parties, who is sufficiently familiar with matters of this character to properly appraise the various inter-corporate dealings and transactions, and who is given power to examine under oath those who have any knowledge of the transactions that are questionable. That such an examination will cost the estate something, goes without saying; but the court will control the matter of expense and hold it within reasonable bounds and this comparatively minor matter should not be allowed to stand in the way of a thorough investigation where there has been such a gross abuse of power by corporate officers as is indicated here and where the losses sustained by the corporation have been so tremendous.

■ And we think that the statutes of limitations referred to by the trustees furnish no sufficient ground for denying the investigation and direction of suit requested in the petition. The examination might disclose facts which would prevent the running of the statutes. The liability disclosed might be of such a character that a business man would settle it or go to trial on the merits rather than place himself in

the position of pleading the statute of limitations against it. As the suggested causes of action are transitory in character, it is entirely possible that jurisdiction might be acquired over the prospective defendants in a jurisdiction where the statutes of limitations would be no defense to them; and suit might be brought in a federal court of equity, where, to say the least, it is extremely doubtful that the statutes would be followed. Cf. Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754. Where a corporation which is alleged to have been greatly wronged by those who have controlled it has sought the haven of the bankruptcy court, that court ought not lightly stay its hand against those who have committed the wrong, on the ground that they might plead a statute of limitations which honorable men might not be willing to plead and which others might plead in vain.

■ Nor are we impressed by the view of the judge below that the investigation is to be denied because opposed by a committee of the debenture holders. It is to be noted that the other committee of debenture holders favored the examination; and it would seem that their wishes are entitled to as much consideration as those who opposed it. Quite aside from this, however, we think that the preferred stockholders had rights that ought not be ignored. They too had contributed capital to the corporation which was seeking reorganization, and their only hope of receiving anything from their investment was for a recovery to be had in behalf of the corporation from those who had mismanaged its affairs. "All those interested in the estate are entitled to the court's protection." Case v. Los Angeles Lumber Co., 308 U.S. 106, 114, 60 S.Ct. 1, 6, 84 L.Ed. 110. Examination under section 167 is one of the important steps in a reorganization where the court is required to exercise an "informed, independent judgment" based upon "adequate, trustworthy information" (National Surety Co. v. Coriell, 289 U.S. 426, 436, 53 S.Ct. 678, 682, 77 L.Ed. 1300, 88 A.L.R. 1231); and stockholders should not be denied the benefit of a thorough and efficient investigation merely because the assets presently in hand would go to bond-

holders or debenture holders upon the winding up of the corporation's affairs. As said in the recommendation of the Securities and Exchange Commission which led to the enactment of Chapter X :*

"In every case a qualified and disinterested trustee should be appointed * * *. The appointment of an independent trustee is designed * * * to make it impossible to leave these estates in the hands of those whose mismanagement may have given rise to the need for reorganization * * *. The independent trustee should be authorized and directed: to make an investigation in every case of the condition of the company and of the events antedating the failure, with the three-fold objective * * * (3) of disclosing and diligently pursuing corporate assets in the form of claims against directors, officers, their affiliated interests and others who may have used corporate control for their personal benefit."

Judge Maris, speaking for the Circuit Court of Appeals of the Third Circuit in Re Philadelphia & Reading Coal & Iron Co. (Appeals of Schrager), 3 Cir., 105 F.2d 354, 356, said with respect to the duty to order an investigation:

"We think it clear that it is not the purpose of Sec. 77B, or of Chap. X [11 U.S. C.A. §§ 207, 501 et seq.] which succeeded it, to furnish immunity to wrongdoing by corporate officers if the requisite majorities of creditors and stockholders approve a plan of reorganization which leaves those officers in possession of the debtor without an investigation of their conduct. On the contrary the duty of the court to direct the investigation of all substantial allegations of mismanagement and fraud is plain."

■ We are not unmindful that the confirmation of the report and the granting of the relief asked in the petitions were matters resting in the sound discretion of the District Judge; but we think it clear that, in refusing to order the further investigation which the record here so clearly called for, the District Judge was not exercising the discretion vested in him but was proceeding on the erroneous assumption that he had no discretion to order a further investigation in view of what he conceived to be the right of the debenture holders

---

* S.E.C. Report of the Study and Investigation of the Work, Activities, Personnel, and Functions of Protective and Reorganization Committees Pt. 1 (1937) p. 899. These recommendations are particularly referred to in the Congressional Reports. See S. Rep. No. 1916, 75th Cong., 3d Sess. (1938) p. 20.

with respect to the funds in the hands of the trustees. At all events, we think that, while ordinarily the judge's action in refusing a further investigation should not be disturbed, the facts here so clearly call for further investigation and action that the order appealed from should be reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed.