In re AMERICAN BANTAM
CAR CO. et al.
No. 10605.

United States Court of Appeals
Third Circuit.

Argued Dec. 3, 1951.

Filed Jan. 14, 1952.

617

---

Morris L. Forer, Philadelphia, Pa., for appellants.

George Zolotar, New York City, for Securities and Exchange Commission.

Elliott W. Finkel, Pittsburgh, Pa., for Trustees of debtor.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

American Bantam Car Company, the debtor, is before the court below in a Chapter X proceeding, 11 U.S.C.A. § 501 et seq., pursuant to an order entered April 19, 1950. The debtor has had an unfortunate history and has gone from a position of comparative affluence, which it attained during World War II, to insolvency. Moreover, due to the exigencies existing in the United States

District Court for the Western District of Pennsylvania the case has not been in the sole charge of one judge. Quite recently, however, the Chief Judge of the District Court has concerned himself with it and quite properly has made it his special charge.

On August 8, 1950 the trustees filed a petition praying authority from the court to conduct examinations pursuant to Sections 21, sub. a, and 167(2) of the Bankruptcy Act, 11 U.S.C.A. §§ 44, sub. a, and 567(2). The court below entered an order directing the trustees to appear before one of the referees in bankruptcy of the Western District of Pennsylvania.[1] The provisions of Section 21, sub. a, of the Bankruptcy Act, as amended, are applicable to Chapter X proceedings. In re Union Mortg. Inv. Co., D.C.Del., 25 F.Supp. 468; In re Morris White Properties Corporation, D.C. N.Y., 21 F.Supp. 635. In re Eastern Utilities Inv. Corp., 3 Cir., 98 F.2d 620, 622. The 21, sub. a, examination has not been completed. The examination was not commenced until July 18, 1951 and at the time of the argument before this court the referee from time to time had conducted hearings totalling nine days. The examination is still proceeding before the referee. The trustees have filed a report, issued December 30, 1950, prepared pursuant to Section 167(2). The report indicates that substantial causes of action may exist against the Class B stockholders who had voting control of the debtor and persons associated with them. This report, however, is not and cannot be deemed to be the equivalent of a 21, sub. a, examination.

On July 21, 1950 the court below extended until August 22, 1950 the time within which the trustees were to petition to set a time for filing a plan of reorganization. No petition to set a time for filing a plan was made at the time designated and probably no reorganization was then possible. Various intermediate steps were taken in the proceeding which need not be outlined here. On September 20, 1951, however, the trustees filed a plan of reorganization, commonly referred to as "The Sixty Trust" or "Thompson" plan and asked that it be set down for hearing. This plan need not be detailed in this opinion. It did, however, contain a provision that causes of action were to be retained by the debtor. On the following day the court by order fixed October 15, 1951 as the time for argument on the trustees' application for an order fixing a time for hearing on the plan. This technique was, we think, needlessly complicated. An immediate, brief, but intensive examination of "The Sixty Trust" plan would have enabled the court below to have determined shortly, within a few days, at most, whether the plan should have been submitted to the parties in interest. Claims against the Class B stockholders and their associates aside, no very complex problems are presented by the instant case.

On October 12, 1951 the Securities and Exchange Commission petitioned the court for an order directing the trustees to resume the 21, sub. a, examination which had been discontinued temporarily. On October 15, 1951 the trustees petitioned for instructions in respect to a compromise settlement of certain claims against Class B stockholders and those associated with them, commonly referred to as the "Monroe Settlement" proposal.[2]

On October 15, 1951, therefore, two matters were pending before the court below: (1) the application of the trustees to fix a

---

1. See the order of August 8, 1950 by Marsh, J., directing that the examination be made.

2. The voting control of the debtor rests with Monroe Auto Equipment Corporation which we have referred to as "Monroe". Monroe owns substantially all of the debtor's B stock which seems to possess no present value. The trustees' report, made pursuant to Section 167 (3), 11 U.S.C.A. § 567(3), indicates that

substantial causes of action may exist in favor of the debtor against Monroe and officers and directors of the latter. Allegedly these causes arise from various intercompany transactions. Questions involving the "Deep Rock" doctrine, Taylor v. Standard Gas & Elec. Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669, as well as the principles enunciated in Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, may be involved.

time for hearing on the "Sixty Trust" plan and (2) the application of the trustees for instructions relative to the "Monroe Settlement" proposal. The "Sixty Trust" plan by its terms required acceptance of its terms by the trustees on a final order with no appeal pending on or before January 25, 1952. The court, concluding that this date could not be met, did not set the plan down for processing as otherwise would have been required by Section 169 *et seq.,* 11 U.S. C.A. § 569 *et seq.* The court also took the position that the "Sixty Trust" plan was inadvisable since it involved liquidation of the debtor. This point is discussed hereinafter.

The court heard the parties on the desirability of proceeding with the "Monroe Settlement" proposal. This proposal as submitted contained conditions which, *inter alia,* required final acceptance by the trustees on or before January 31, 1952 on an appropriate order of the court, and also required the simultaneous dismissal of the Chapter X proceeding. The condition last referred to was withdrawn by the proponents of the settlement proposal at the request of the court.

General Order No. 33[3] requires the trustees to set forth the reasons why it is for the best interest of the estate that a controversy should be settled by compromise. The trustees made no recommendation respecting the proposed settlement but merely petitioned for instructions. No notice of the proposed compromise was given as required by Section 58, sub. a, (6), of the Bankruptcy Act, 11 U.S.C.A. § 94, sub. a, (6). No notice of the proposed dismissal of the proceedings was given as required by Section 58, sub. a, (7), 11 U.S.C.A. § 94, sub. a, (7). The court made it clear that it was of the mind that if the proposed compromise was accepted and approved (indicating that such a result might prove to be desirable), the Chapter X proceeding should and would be dismissed. In a memorandum opinion filed November 9, 1951 the court said in regard to the settlement proposal: "If the settlement were approved, Bantam would be able to pay all its obligations, insolvency no longer would exist, and the aid of this Court would no longer be required. In short, the reorganization proceeding would be subject to dismissal and Bantam returned to its stockholders." The court obviously regarded adjudication of the settlement proposal as a prime step in the final disposition or the actual dismissal of the Chapter X proceeding. Section 236(2) of the Bankruptcy Act, 11 U.S.C.A. § 636 (2) required notice to the parties in interest. No notice was given.

On October 16, 1951 following argument the court appointed as a special master a member of the Allegheny County Bar who is not a referee in bankruptcy, and directed him immediately to hear testimony "relative to the fairness and reasonableness of the compromise offer of Monroe * * *" and to report to the court by December 3, 1951. The order also gave "all parties in interest" "two weeks from" the date "of such report" to file objections or exceptions to it. The decree fixed December 17, 1951 as the time for a hearing on the report and the exceptions. In its memorandum opinion filed on the same day the court stated that the argument showed that it was necessary that "all of the facts relative to the reasonableness and fairness" of the Monroe compromise "be developed and made available to the Court at the earliest possible date"; that the court itself would be engaged for an indefinite period of time in the trial of an anti-trust indictment and that therefore "the services of * * * [an *ad hoc*] Special Master would be required" for a report was needed "at the earliest possible date", and that since the taking of testimony would require immediate continuous sessions of at least several days a week for three or four successive weeks, the appoint-

3. General Order No. 33, 11 U.S.C.A. following section 53, provides in pertinent part: "Whenever a * * * trustee * * * in possession shall make application to the court for authority * * * to compromise any * * * controversy [arising in the settlement of an estate] * * * the application shall clearly and distinctly set forth the subject matter of the controversy, and the reasons why it is proper and for the best interest of the estate that the controversy should be settled by * * * compromise."

ment of a referee in bankruptcy as a special master "would not be practicable". The opinion concludes by stating that it is necessary to appoint a special master who would "agree to devote his time forthwith and exclusively" to the task of passing on the settlement.

■ The Bankruptcy Act affords but limited sanction for the appointment of *ad hoc* special masters. Section 117, 11 U.S.C.A. § 517, provides that "The judge may, at any stage of a proceeding under this chapter, refer the proceeding to a referee in bankruptcy to hear and determine any and all matters not reserved to the judge by the provisions of this chapter, or to a referee as special master, to hear and report generally or upon specified matters. *Only under special circumstances shall references be made to a special master who is not a referee.*" [4,5] The words of the statute express a clear limitation upon the power of the district court to appoint an *ad hoc* master unless the court has found that "special circumstances" exist which justify the appointment. One of the special circumstances to be found by the court is that none of the referees in bankruptcy of the district is available to accomplish with the necessary dispatch the task to be imposed on the special master. The court below did not make such an express finding.

■ But quite aside from the foregoing we conclude that the order was not one justified by the plain circumstances of the case at bar. The order will effect a needless duplication of the labor of examining the debtor's officers and employees and the numerous transactions and connections between the debtor, its Class B stockholders and the Monroe group. Whether the Monroe settlement proposal should be accepted cannot be determined without a careful examination into the validity of possible claims which the debtor may have against the Class B stockholders and those associated with them and the Monroe group. This inquiry may be more appropriately made during the course of the 21, sub. a, examination already commenced than in a new proceeding. Nine days of hearings have already been had before the referee in bankruptcy who is a full-time referee whose salary is paid by the United States. Referee Adair, before whom the 21, sub. a, examination is proceeding, can report the facts respecting possible claims against the Monroe group and the desirability of the proposed settlement. Money will be saved to the estate and the services of a judicial officer of the United States with long experience in corporate reorganizations can be made available.[6] We conclude that the order appealed from does not represent a sound exercise of judicial discretion. We do not base our reversal of the order on a discretionary point, however, but base it on the more serious ground that the court below for the reasons set out hereinafter, could not validly exercise its power to make the order under the circumstances.

The order must be viewed against the background of the case. It is clear from that portion of the court's memorandum opinion of November 9, 1951, hereinbefore quoted, to the effect that if the Monroe proposal be accepted the reorganization proceeding would become subject to dismissal and the debtor would be returned to its stockholders, that the order is not in fact merely procedural but, under the circumstances at bar, possesses some of the aspects of a substantive final decree. It makes a reorganization as contemplated by Chapter X improbable for no plan of reorganization can be consummated (or, as a practical matter, even proposed) while the offer of settlement is outstanding. The court below seemingly regards the Monroe offer as *the* meth-

---

4. We point out that Rule 53(b), Fed. Rules Civ.Proc. 28 U.S.C.A., states that "A reference to a master shall be the exception and not the rule." We do not intend to indicate, however, in this opinion that a hard-pressed United States district court may not avail itself of the services of a special master. Our remarks in the instant case are directed to the appointment of a special master, who is not a referee in bankruptcy, in a Chapter X proceeding.

5. Emphasis added.

6. We wish to make plain that what we have said is not intended in any way to reflect on the capabilities of the *ad hoc* special master designated by the court.

od of disposing of the case. It may draw finality in its wake. The order gives the case a new direction, away from reorganization and toward the dismissal of the Chapter X proceeding. Its effect is to indefinitely postpone, if it will not cut off, the right of the parties in interest to a reorganization. The trial court in its opinion of November 9, 1951 states that if the settlement be approved the reorganization proceeding will be dismissed and the debtor returned to its stockholders.

If there is to be no reorganization and the Chapter X proceedings are to be terminated and the debtor returned to its stockholders notice must be given as required by Section 236(2) of the Bankruptcy Act, 11 U.S.C.A. § 636(2). If the Monroe proposal is to be accepted notice must be given as provided by Section 58, sub. a (6), 11 U.S.C.A. § 94, sub. a (6). If the proceedings are to be dismissed, notice of the proposed dismissal must be afforded under the provisions of Section 58, sub. a (7), 11 U.S.C.A. § 94, sub. a (7). Unless notice be given as required by the Bankruptcy Act, the court lacks the power to enter a valid order in the premises. Failure to comply with the requirement of G.O. 33 that the trustees must state their recommendation as to a proposed compromise to the court, has been held to constitute reversible error. In re George-Grenatti Associates, D.C. S.D. N.Y. 27 F.Supp. 31. The reference to and the proceedings before the special master is of great importance to all the parties in interest. Evidence is to be received at these hearings and the special master is ordered to make findings of fact and conclusions of law. While objections and exceptions can be filed to the special master's report, it is clear that a very important part of the parties' day in court lies in the hearings to be conducted before the master. For the reasons given the order complained of must be set aside.

■ The order complained of is an appealable order. It is not a mere "procedural direction" within the purview of our ruling in Re Pittsburgh Rys. Co., 3 Cir., 164 F.2d 488. As we have said the order has immense substantive effect. Substance not form must control. Cf. Phillips v. Securities and Exchange Commission, 2 Cir., 171 F.2d 180, 182. Where a reorganization has taken a course inconsistent with legislative intent immediate corrective action is necessary. Securities and Exchange Comm. v. U.S. Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293. But if the order complained of be treated as purely interlocutory, in the sense of not being final or definitive, much more than an abuse of legal discretion is involved for, as we have pointed out, the trial court proceeded under an erroneous conception of the requirements of notice. See by way of analogy Committee for Holders, etc., v. Kent, 4 Cir., 143 F. 2d 684. Moreover, as was said by the Court of Appeals for the Second Circuit in Delatour v. Meredith, 144 F.2d 594, 595, Section 24, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 47, sub. a, " * * * makes appealable as of right virtually all interlocutory decrees in proceedings in bankruptcy * * *." The court, however, laid emphasis upon the fact that the order under review was one of substance.

■ In conclusion we wish to point out that a plan of reorganization which does not return a debtor to its original stockholders is not *per se* objectionable and that reorganization may permissibly take the form of liquidation as was contemplated by the "Sixty Trust" plan. See for example In re Midland United Co., D.C.Del., 58 F.Supp. 667. The court below seemed resolutely to turn its face against any plan which involved liquidation and seemed to favor a plan or course of conduct of the proceedings which would turn the company back to its original stockholders.[7] Where, as here, it

---

7. The court stated during the course of the hearings before it: "The only suggestion offered * * * is to sell * * * and I am not going to approve the sale * * * If I have to operate this company * * * I am going to do that * * *."; "I am not going to order the trustees to present any plan of reorganization which will bring about liquidation * * *."; "I will consider and I will direct the trustees to present any plan that makes possible turning this company back to the stockholders * * *.".

appears that substantial causes of action may exist against incumbent management and those acting in association with it, the exercise of sound judicial discretion demands an intensive evaluation of the pertinent facts. See Committee for Holders, etc. v. Kent, supra; In re South State Street Bldg. Corp., 7 Cir., 105 F.2d 680, 682; H. Rep. No. 1409, 75th Cong. 1st Sess. 38; Report of the Securities and Exchange Commission on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees, Pt. 1, pp. 311–12. In In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 105 F.2d 354, 356, we stated that it is not the purpose of a Chapter X proceeding to furnish immunity to wrongdoing and that a reorganization which leaves former officers in possession of a debtor, which may have been subjected to improvident management or worse, could not be countenanced without investigation of all substantial allegations of mismanagement and fraud.

The order appealed from will be reversed.