Willard L. GLEESON and Mary F.
Gleeson, Appellants,

v.

Fred E. CARR, Trustee in Bankruptcy of
the Estate of Broadcasting Corporation
of America, debtor, Appellee.

No. 14203.

United States Court of Appeals,
Ninth Circuit.

Jan. 15, 1955.

Rehearing Denied March 22, 1955.

Morris Lavine, Los Angeles, Cal., Shaw & Kegley, Riverside, Cal., for appellants.

Craig, Weller & Laugharn, Frank C. Weller, Hubert F. Laugharn, Thomas S. Tobin, Los Angeles, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and McLAUGHLIN, District Judge.

McLAUGHLIN, District Judge.

This is an appeal taken from orders made in a reorganization proceeding under Chapter X of the Bankruptcy Act.

The Broadcasting Corporation of America, debtor, hereinafter referred to as BCA, is a California corporation which operated five radio stations in California for some time prior to 1946. The outstanding stock of BCA totals 250 shares owned as follows:

127 shares—Willard Gleeson
106 " —E. W. Laisne
 10 " —E. D. Laisne (son of E. W. Laisne)
 7 " —held individually by seven persons

Appellants Willard and Mary Gleeson are husband and wife. In addition to being the sole majority stockholder, Mr.

Gleeson is a director, president, and manager of BCA; Mrs. Gleeson is a director and secretary of BCA. E. W. Laisne is the third director.

In December, 1946, BCA was assigned television Channel 1 by the Federal Communications Commission and began construction. In May, 1947, work was suspended by virtue of an international dispute over Channel 1 and subsequently the Commission withdrew the Channel. In November, 1947, Channel 6 was tentatively assigned to BCA; however, the Commission suspended construction on all new television stations in the United States in March, 1948, and since then BCA has not resumed construction. The significance of attempting to incorporate television within its operations is the cost incurred which materially impaired the financial condition of BCA.

In September, 1949, a meeting of the board of directors of BCA was held. Only the Gleesons attended this meeting; Laisne had notice but did not attend. At the meeting, Mr. Gleeson made a motion to adopt a resolution authorizing and directing him as president and Mrs. Gleeson as secretary to execute and deliver a promissory note in the sum of $90,762.60 to themselves, secured by a second trust deed upon the real property of BCA. This motion was seconded by Mrs. Gleeson, adopted by both, and the resolution was executed two days thereafter. The note is based upon the following pre-existing indebtedness:

$25,966.45—Advances to BCA prior to December 31, 1944
30,600.00—Cash advances, January 1, 1945 to September 21, 1949
24,500.00—Accumulated salary from 1938 to October 1, 1949
9,696.15—Miscellaneous

At the time the note and trust deed were given, BCA was heavily indebted to many creditors, secured as well as unsecured. These corporate debts were incurred through Gleeson as president and manager of BCA. No offer of similar security was made to other unsecured creditors.

On November 29, 1951, BCA filed an amended petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., seeking reorganization. The petition represented that the corporate assets were valued at $595,566.89 and its liability totaled $195,392.60. The petition was approved; William Ross appointed trustee in possession and Nelson Peters appointed special master to hear and report on all matters arising in the court of the reorganization proceeding. Dates for the various hearings were set, including the hearing pursuant to Chapter X, § 236 of the Act, 11 U.S.C.A. § 636, in the event no plan was approved. The trustee was directed to give notice of the hearings to all parties in interest. Printed notices were sent out on or about July 28, 1952, to two hundred and forty-three creditors and parties in interest. The appellants and the debtor corporation attended the hearings; appellants filed secured claims and the debtor corporation, objecting to the plan proposed by the trustee, proposed a plan of its own. Both plans were eventually rejected by the creditors. BCA then filed a petition on April 1, 1953, under Chapter X, § 147 of the Act, 11 U.S.C.A. § 547, to convert to a Chapter XI proceeding based on a bill pending in Congress to appropriate approximately $300,000.00 to compensate BCA for the loss attributable to the governmental action incurred in its television venture. This petition was denied.

The special master found the total assets of BCA to be $211,167.89 while its liabilities amounted to $431,138.76. The master recommended that the debtor be adjudged a bankrupt and that the secured claims of appellants and the Citizens National Trust and Savings Bank of Riverside be allowed.

The final hearing on the reorganization matter was held on March 2, 1953. In the order dated May 22, 1953, the district judge made the following determinations: the assets and liabilities of BCA on October 29, 1951 (the date of the original petition) were $211,167.-89 and $431,138.76 respectively; BCA

was adjudged a bankrupt and the matter referred to David Head as referee in bankruptcy; the secured claims of appellants and the Riverside Bank to the extent that its claim was based on personal notes of appellants or guaranteed by them were disallowed.

The Gleesons, as individuals, in an amended notice, appeal from the above orders and specify the following errors:

1. The district court erred in entering the order adjudging the debtor a bankrupt as there was no hearing upon notice as required by § 236 of the Act.

2. The district court erred in referring the proceedings to David B. Head of Los Angeles instead of N. C. Peters of Riverside.

3. The district court erred in denying the debtor's petition under § 147 of the Bankruptcy Act to convert the proceedings to one under Chapter XI.

4. The district court erred in disallowing the secured claims of Willard and Mary Gleeson and that portion of the secured claim of the Riverside Bank representing a direct and individual debt of Willard Gleeson.

The trustee in bankruptcy filed a motion to dismiss this appeal in so far as it attacks the order adjudicating BCA a bankrupt.

#### Motion to Dismiss

The trustee in bankruptcy's motion must be denied.

■ The motion's merit is to be measured by those portions of the Act specifically governing appeals in reorganization proceedings. These provisions control here as the adjudication of the corporation as a bankrupt was made as an order terminating the reorganization proceedings.[1]

■ As creditors, appellants' standing to appeal is derived from § 206 of the Act, 11 U.S.C.A. § 606, which provides that:

"The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter."

The right to be heard under this section includes the right to appeal. Rogers v. Consolidated Rock Products Co., 9 Cir., 1940, 114 F.2d 108; In re Keystone Realty Holding Co., 3 Cir., 1941, 117 F.2d 1003; Dana v. Securities & Exchange Commission, 2 Cir., 1942, 125 F.2d 542; In re South State Street Bldg. Corp., 7 Cir., 1943, 140 F.2d 363; Horowitz v. Kaplan, 1 Cir., 1951, 193 F.2d 64.

■ Since the order adjudicating BCA a bankrupt was a matter arising in a proceeding under Chapter X, § 236 of the Act, it falls within the purview of § 206 granting appellants the right to be heard. By virtue of this right to be heard, appellants also have the right to appeal. For these reasons the motion must be denied.

#### Notice and Hearing under § 236

We come now to the merits of this appeal.

■■ Appellants claim that the order adjudging BCA a bankrupt was entered without a hearing upon notice as required by Chapter X, § 236 of the Act. The plain meaning of § 236 coincides with the fundamental essentials of due process that unless notice is given and a hearing held and an opportunity to be heard is accorded the parties affected, an adjudication of bankruptcy must be reversed. Sylvan Beach v. Koch, 8 Cir., 1944, 140 F.2d 852; In re American Bantam Car Co., 3 Cir., 1952, 193 F.2d 616. However, this notice requirement does not place a greater obligation upon the judge "than to see that notice reasonably designed to bring the matter in ordinary course to the creditor's attention is given." North American Car Corp. v. Peerless W. & V. Mach. Corp., 2 Cir., 1944, 143 F.2d 938, 941. Here the record clearly shows that the district court issued an order dated January 14, 1952 in which a hearing pursuant to § 236 was set for May 12, 1952 at a specific time and place, and the trustee in possession was directed to give notice.[2]

1. Transcript of Record, pp. 211, 235.

2. Transcript of Record, pp. 47, 48.

In his report dated September 5, 1952, the trustee in possession in the reorganization proceeding informed the court that pursuant to the amended orders of March 19 and July 10, 1952, the notice of hearing set for October 6, 1952 was sent out by mail to all known creditors, stockholders, and parties in interest, 243 in number, on or about July 28, 1952.[3] The hearing was continued from time to time to March 2, 1953 when BCA was adjudged a bankrupt.[4] Appellants attended the interim hearings and were or should have been well advised in the matter. Under these circumstances we can only come to the conclusion that the order of adjudication was entered after a hearing held upon adequate notice. The fact that the notice was coupled with other notices regarding the reorganization proceeding presents no difficulties in view of § 120 of the Act, 11 U.S.C.A. § 520.

### Referee in Bankruptcy

■ Appellants complain that it was error for the district judge to refer the proceedings to David B. Head of Los Angeles as referee in bankruptcy instead of Referee N. C. Peters of Riverside. This is a matter in ordinary bankruptcy and not in reorganization, Sylvan Beach v. Koch, supra, and is therefore governed by § 22, sub. b of the Act, 11 U.S. C.A. § 45, sub. b. Under that section, the judge, within his discretion, may at any time for convenience of the parties or for cause transfer a case from one referee to another. Benioff v. Wyman, 9 Cir., 1952, 195 F.2d 440; G. Levor & Co. Inc. v. Hunt, 6 Cir., 1940, 111 F.2d 450. Here there is no evidence that the judge abused his discretion, nor is there any claim or evidence that the appellants were prejudiced by the reference.

### Petition under § 147

■ Appellants next complain of the order denying the petition of BCA under § 147 of the Act to convert the Chapter X reorganization proceeding in-

to a Chapter XI arrangement matter. Appellants claim that "The right to amend is given to the debtor under Section 147. The debtor in this case did amend, * * * when he does so, it shall be treated thereafter for all purposes as a Chapter XI proceedings."[5] Appellants misconstrue § 147 to mean that a petition to amend by the debtor automatically converts the proceeding from reorganization to arrangement. On the contrary, the grant or denial of a request to amend rests within the court's discretion. John Hancock Mut. Life Ins. Co. v. Casey, 1 Cir., 1944, 141 F.2d 104. The petition to amend is chiefly based on the possibility that the debtor may realize compensation from Congress for losses incurred in its television venture due to adverse governmental action.

The court below cannot be held to have abused its discretion in ruling that the movant's optimism should be based on facts, not hope. When, as and if the facts warrant, Chapter XI may be invoked.

### Disallowance of Secured Claims

Finally appellants claim that the district court erred in disallowing the secured claims of appellants and the Riverside Bank contrary to the recommendations of the special master and without an independent hearing.

■ There can be no question of the power of the court to allow or disallow claims, secured and unsecured, in a reorganization proceeding. Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; In re Commonwealth Light & Power Co., 7 Cir., 1944, 141 F.2d 734.

■ Nor can it be doubted that a master's report is other than advisory. It is not binding upon the court, and it may be adopted or rejected in whole or in part after due notice and opportunity to be heard has been accorded the interested parties. In re Mifflin Chemical Corp., 3 Cir., 1941, 123 F.2d 311; § 117

3. Transcript of Record, pp. 123, 124, 295.
4. Transcript of Record, pp. 244, 245.

5. Opening Brief of Appellant, p. 26.

of the Bankruptcy Act, 11 U.S.C.A. § 517.

Here a hearing upon notice was held upon the subject of the master's report on January 26, 1953. The court found that it could not accept the master's finding and conclusion that appellants' claims were entitled to reorganization recognition as secured claims, and so set the same aside in this regard, finding and concluding for itself to the contrary.[6]

 As appellants had notice and opportunity to be heard, they cannot now be heard to complain simply because the court disagreed with the master. No contention is made that the court was wrong in substance. Even if it were, no prejudicial error resulted here, for the reorganization plans failed, and during the bankruptcy proceedings under the very order of the court complained of appellants will have a chance to prove anew if they can their contention that they should be recognized as secured creditors of the bankrupt corporation.

The orders of May 22, 1953, appealed from are affirmed.

6. Transcript of Record, pp. 211, 244, 245.