In the Matters of **THIRD AVENUE TRANSIT CORPORATION**, Surface Transportation Corporation of New York, Westchester Street Transportation Company, Inc., the Westchester Electric Railroad Company, Warontas Press, Inc., Debtors.

Application of **WOOLFSON**.

Nos. 85851, 86410, 86413, 86412, 86537.

United States District Court
S. D. New York.
Nov. 28, 1958.

Saxe, Bacon & O'Shea, New York City, for trustees, Edward D. Burns, John A. Kiser, New York City, of counsel.

A. Philip Woolfson, pro se.

DIMOCK, District Judge.

A. Philip Woolfson, as a beneficial owner of stock in Third Avenue Transit Corporation, moves to vacate three orders of this court made during consolidated proceedings for the reorganization of Third Avenue Transit Corporation and others pursuant to Chapter X of the Bankruptcy Act. Woolfson asks that the order confirming the reorganization of Third Avenue Transit Corporation be modified so as to permit him to institute an action for damages against the reorganization trustee or that the order of December 17, 1956, finding that the plan of reorganization had been substantially consummated, be vacated and the proceedings reopened on the ground that a preceding order finding that the stockholders had no interest was void and that fraud was perpetrated on the court by the reorganization trustee.

He also asks that the order awarding final allowances to the parties be vacated on the ground that fraud was perpetrated on the court by the Securities and Exchange Commission.

Woolfson thus makes three charges: first, that the order of August 5, 1955, finding the debtor insolvent and that the stockholders had no interest was void, second, that fraud was perpetrated on the court by the reorganization trustee and, third, that fraud was perpetrated on the court by the Securities and Exchange Commission. These three charges will be taken up in order.

Woolfson says that the order finding that the stockholders had no interest was void because of (a) failure of the reorganization trustee to give notice as required by an order of June 27, 1955, to Woolfson and stockholders of record of a scheduled hearing for July 6, 1955, (b) failure of the reorganization trustee to give notice to Woolfson and stockholders of hearings on the question of strict insolvency of the debtor, and (c) failure of stockholders to receive notice of the order of August 5, 1955, finding that the stockholders had no interest.

All of these charges were heard and rejected in a previous motion made by Woolfson and their rejection was affirmed by the Court of Appeals in In re Third Avenue Transit Corporation, 2 Cir., 238 F.2d 665, certiorari denied Woolfson v. Doyle, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599.

Woolfson attempts to support the present application by affidavits that certain stockholders did not receive notice of a hearing upon the reorganization plan scheduled for July 6, 1955. An answering affidavit states that the notices were mailed to the proper addresses and not returned undelivered by the Post Office. I accept the truth of the answering statement. The direction of the court was that the notices be mailed and they were properly mailed so that, even if some of them were not received, that would not constitute a defect in the proceedings. "[F]ailure to receive notice properly given does not affect the validity of the confirmation order, and only gives grounds for appeal to the court to exercise its discretion favorably." North American Car Corp. v. Peerless Weighing & Vending Machine Corp., 2 Cir., 143 F.2d 938, 941; see also Gleeson v. Carr, 9 Cir., 219 F.2d 64. Even were I satisfied that some of the notices were not received I would not exercise my discretion. The stockholders were vigorously and capably represented at all hearings where their interests were involved.

Woolfson's second charge is that fraud was perpetrated on the court by the reorganization trustee. He attempts to support this by three specifications: (a) an affidavit of June 29, 1955, with respect to compliance with the order of June 27, 1955, requiring notice to stockholders of record, contained false statements known to be false by the reorganization trustee, (b) that subsequent affidavits contained similar statements known to be false by the reorganization trustee, and (c) that the reorganization trustee knew that trading of the common stock on the New York Stock Exchange had been suspended on August 5, 1955, without approval of

the court and that it had been so suspended and later delisted without approval by the Securities and Exchange Commission.

■ The charges with respect to false statements with respect to compliance with the order requiring notice to the stockholders of the hearing on July 6, 1955, have been disposed of by the previous decisions of this court and the Court of Appeals above referred to and by the discussion above. The matter of suspension of the common stock from trading on the New York Stock Exchange and its delisting will be discussed in connection with a similar charge against the Securities and Exchange Commission. As will there appear there was no violation of law or regulations in connection with approval by the court or the Securities and Exchange Commission of the suspension or delisting so that the reorganization trustee could not have been guilty of fraud because of his knowledge that any of those proceedings had been taken without approval by the court or the Securities and Exchange Commission.

Woolfson's final specification of fraud on the court by the reorganization trustee was his alleged failure to get the court's instructions whether the reorganization proceedings had not become moot on account of withdrawal of jurisdiction of the New York Public Service Commission prior to the order finding that the stockholders had no interest.

■ Whatever may be the theory of this specification it is at least clear that it is grounded upon withdrawal of jurisdiction of the New York Public Service Commission. Since the New York Public Service Commission continued to have jurisdiction of the debtor throughout the proceedings, this specification must fail.

The action of this court in referring the plans to the Public Service Commission was required by law. The bankruptcy statute refers to "a State Commission having regulatory jurisdiction", Section 178; and even after the 1950 amendments the Commission continued to have a great deal of regulatory juris-

diction. The amendments to the Public Service Law made in 1950 only affected the jurisdiction of the Public Service Commission with respect to service and rates of fare. Article 3–A of the Public Service Law continues to grant to the Commission "general supervision of all omnibus corporations", "[the] power to * * * examine omnibus corporations and keep informed as to their general condition, capitalization, franchises and the manner in which their property is operated * * * their compliance with all provisions of law * * * and to issue such orders in connection therewith as may be required", "to require every omnibus corporation * * * to file with the commission an annual report", "to examine the accounts * * and * * * to prescribe by order the accounts in which particular outlays and receipts shall be entered, charged or credited", "to investigate the cause of all accidents", "to compel by subpoena duces tecum, the production of any accounts, books, contracts * * * and papers", Section 61. The Commission's approval is also required for the issuance of stocks, bonds, notes or other evidences of indebtedness payable on demand or at periods of more than 12 months, Section 62. Reorganizations of omnibus corporations " * * * shall be subject to the supervision and control of the commission, and no such reorganization shall be had without the authorization of such commission", Section 62–a. The transfer of franchises or stocks is also subject to the approval of the Commission, Section 63. A certificate of public convenience and necessity must be obtained before an omnibus line can be operated, Section 63–d. The Commission is also empowered to require, among other things, the maintenance of insurance or self-insurance funds, Section 61, subd. 13–a.

Thus, it appears that the debtors are clearly "subject to the jurisdiction of a State commission having regulatory jurisdiction", Section 178, and this court was right in submitting the plans of reorganization for certification and report by that Commission.

Woolfson's charges of fraud on the court by the Securities and Exchange Commission he attempts to support by four specifications which I will take up in order.

First, it is said that the advisory report of the Securities and Exchange Commission approving the plan of reorganization at the time of its proposal failed to state that the common stock had been suspended from trading on the New York Stock Exchange on August 5, 1955 and that no action had been taken to delist it. The significance of this specification is not apparent. Without some charge that the court was unaware that the stock had been suspended and not delisted a charge of fraud upon the court by failing to disclose those facts has no force.

The second specification of fraud upon the court by the Securities and Exchange Commission is that the Commission failed to advise the court that the procedural requirements of Chapter X had not been complied with by the trustee and that the copies of summaries of annual reports had not been mailed to stockholders and notices of hearings on reorganization plans had not been mailed to stockholders. The matter of notices of hearings has been disposed of upon Woolfson's previous motions and by the discussion above. Section 190 of the Bankruptcy Act requires that the court shall direct that copies of summaries of annual reports be mailed to the stockholders. There is no specification of any violation of any such direction nor could there be since the trustee did comply with every direction of the court in this respect.

The third specification in support of the charge of fraud on the court by the Securities and Exchange Commission is that the Commission failed to advise the court that on March 6, 1957, when Surface Transit, Inc., the new corporation, applied for listing of its bonds on the New York Stock Exchange, the Third Avenue stock continued to be a listed security and a registered security. Again there is a failure to allege that the court was in any way deceived as to the listing or registration of the stock.

The final and fourth specification in support of the charge of fraud upon the court by the Securities and Exchange Commission is the Commission's alleged failure to advise the court that in striking the stock from the listing on May 4, 1957, the New York Stock Exchange failed to comply with the applicable law and regulations.

The suspension of the common stock from trading was accomplished pursuant to Rule X-12D2-1 of the Securities and Exchange Commission and Section A 16 of the Rules of the Stock Exchange (N.Y. S.E. Company Manual A 290-291).

Said Securities and Exchange Commission rule provides in pertinent part:

"(a)(1) A security listed and registered on a national securities exchange may be suspended from trading by such exchange, in accordance with its rules."

Said Stock Exchange rule provides in pertinent part:

"*Authoritative Advice that Security is Without Value:* The Exchange does not pass judgment upon the value of securities. However, immediately upon receipt of advice, deemed by it to be authoritative, that a listed security is without value, the Exchange will suspend dealings therein."

When counsel for the reorganization trustee supplied the Exchange, at its request, with a certified copy of the order of this court dated August 5, 1955, determining that the debtor was insolvent and its stock without value, the Exchange most properly "deemed" the "advice" of this court to be "authoritative". This court not only had jurisdiction to make such a finding but, under the Bankruptcy Act, its jurisdiction was exclusive. Hence the suspension of trading was in all respects justified, and, in fact, compelled by the circumstances.

The delisting of the old stock was similarly effectuated in complete compliance with law.

Following the provision of the rules of the Exchange with respect to suspension of trading referred to above, reference is made to delisting:

"Dependent upon subsequent events and all circumstances of the particular case, the Exchange may, at an appropriate time subsequent to the suspension of dealings, make application to the Securities and Exchange Commission, under the Commission's Rule X–12D2–1 or Rule X–12D2–2 (whichever may be appropriate in the circumstances), for removal of the security from listing and registration (and after all due action is taken in respect of such application, the security will be removed from listing and registration); or the Exchange may restore the security to dealings if circumstances seem to warrant such restoration.

"No action is required of the company to effect suspension from dealings, or subsequent removal from listing and registration under this procedure except for the furnishing of such information or notice as the Exchange may request."

The applicable Securities and Exchange Commission rule (X–12D2–2) provides in pertinent part:

"(a) Within a reasonable time after a national securities exchange knows or is reliably informed that any of the following conditions exist with respect to a security listed and registered thereon, the exchange shall file with the Commission a notification on Form 25 of its intention to remove such security from listing and registration:

\*    \*    \*    \*    \*    \*

"(4) All rights pertaining to the entire class of the security have been extinguished: Provided, That where such an event occurs as the result of an order of a court or other governmental authority, the order shall be final, all applicable appeal periods shall have expired, and no appeals shall be pending.

"Effective date of removal: If the conditions of this section are complied with, removal of a security from listing and registration pursuant to a notification on Form 25 (§ 249.225 of this chapter) shall become effective at the opening of business on such date as the exchange shall specify in said form."

Almost two years after this court had found the stock to be without value and subsequent to the reaffirmation of this finding in the order confirming the plan of reorganization entered on October 8, 1956, the affirmance of that order by the Court of Appeals on November 30, 1956, the denial of Woolfson's petition for certiorari by the United States Supreme Court on March 11, 1957, and the denial of his petition for a rehearing on April 8, 1957 [353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 725], and the subsequent entry of this court's order finding that the plan had been substantially consummated, the Stock Exchange filed the notification provided by the S.E.C. rule and, in due course, removed the stock from listing and registration.

It is clear that the actions of the Stock Exchange were in accordance with its rules and the rules of the Securities and Exchange Commission.

The motions are denied.