**AUSTRIAN et al. v. WILLIAMS et al.**

**Civ. 32-149.**

United States District Court
S. D. New York.

July 8, 1948.

See also 67 F.Supp. 223.

Austrian & Lance, of New York City (Carl J. Austrian, Saul J. Lance, George H. Schwartz and Isadore H. Cohen, all of New York City of counsel), for plaintiffs.

Milton Pollack and Sullivan & Cromwell, all of New York City (Milton Pollack, of New York City, of counsel), for defendants Harrison Williams and others.

Sullivan & Cromwell, of New York City (Edward H. Green, William Piel, Jr., and E. H. Sykes, all of New York City, of counsel), for defendants Henry S. Bowers and others.

LeBoeuf & Lamb, of New York City (Horace R. Lamb and Craigh Leonard, both of New York City, of counsel), for defendants James F. Fogarty and another.

Hawkins, Delafield & Wood, of New York City (Barent L. Visscher, of New York City, of counsel), for defendants John B. Niven and others.

Roger S. Foster, Sol., and Aaron Levy, both of Washington, D. C., for Securities and Exchange Commission as, amicus curiae.

COXE, District Judge.

These are motions by the defendants, pursuant to Rules 12(b) (6) and 56 of the Federal Rules of Civil Procedure, 28 U. S.C.A., for an order dismissing the amended complaint and granting summary judgment in their favor on the ground of failure to state facts on which relief may be granted and because all of the claims asserted in the complaint are barred by the applicable New York Statute of Limitations.

Central States Electric Corporation (hereafter referred to as "debtor"), an investment company, is a Virginia Corporation which had its principal office in Richmond, Virginia, and which also maintained an office in New York City. On February 23, 1942, it filed, in the United States District Court for the Eastern District of Virginia, its petition for reorganization under Chapter X of the Bankruptcy Act, 11 U. S.C.A. § 501 et seq., which was approved as properly filed on February 27, 1942. Trustees were then appointed, who, after an investigation of the affairs of the debtor under Section 167 of the Bankruptcy Act, filed a report which "pointed out probable liability on the part of certain officers, directors and stockholders of the corporation but recommended that no suits be instituted on that account, on the ground that recovery was barred by the statutes of limitations of the states where the parties liable were resident". Committee for Holders &c. v. Kent, 4 Cir., 143 F.2d 684, 685.

The Virginia reorganization court accepted the report, but the Fourth Circuit Court of Appeals held, in an opinion filed on June 12, 1944 (143 F.2d 686, 687), that the investigation had not been thorough and that there should be "an investigation of the most complete and thorough-going character", which "might disclose facts which would prevent the running of the statutes * * * and suit might be brought in a federal court of equity, where, to say the least, it is extremely doubtful that the statutes would be followed."

Thereafter, the original trustees resigned or were removed, and on November 15, 1944, plaintiff Austrian was appointed trustee. Plaintiff Butcher was also appointed a trustee on March 20, 1945. These trustees conducted a further in-

vestigation under Section 167, pursuant to an order of the Virginia District Court, dated November 15, 1944, and on July 5, 1945, this action was instituted.

The defendants are Harrison Williams; the officers and directors, past and present, of the debtor; the members of Touche, Niven & Co., a firm of certified public accountants; the members of Goldman, Sachs & Co., a private banking firm; and certain corporations, all the capitol stock of which is alleged to have been owned, directly or indirectly, by Williams.

It is alleged in the amended complaint that Williams, at all times subsequent to 1912, owned and controlled certain shares of stock of the debtor which, on and after December 31, 1922, amounted at all times to more than a majority thereof; that, by reason of such ownership and control, he "completely dominated and controlled the assets, business, policies and affairs of the debtor, and, by reason of such domination and control, caused to be elected as directors and as officers of the debtor only such persons as would be subservient to his will and would carry out his wishes"; that, by reason of the foregoing facts, "Williams was subject to and in fact assumed all of the duties, liabilities and responsibilities of a fiduciary of and for the debtor"; that, as early as 1922, "Williams conceived of a plan and conspiracy the single and entire purpose of which was to use his fiduciary position as the dominant and managing stockholder of the debtor for his own personal profit and for his own personal and selfish purposes, to draw large amounts in cash from the debtor by way of dividends, to make and enjoy secret profits, to acquire interests and assets to the detriment of the debtor and in complete disregard of the interests and welfare of said debtor and Williams' fiduciary duties to the debtor".

The amended complaint then sets out thirteen different transactions. It is alleged, generally, that the defendants, or some of them, conspired to carry out the transactions; that they resulted in waste, destruction or wrongful misappropriation and disposition of the debtor's assets, or property to which it was entitled, or in unlawful profits received by Williams or his companies; and that the defendants were guilty of breaches of trust with respect to the debtor and are liable to account to it, and to plaintiffs, as its trustees, "for moneys and property received" by them, "for all losses" to the debtor, and "for all profits made or received" by them as the result of their wrongful acts and breaches of trust. It is also alleged that Williams and the other defendants deliberately and fraudulently concealed, and kept concealed, from the debtor and plaintiffs, all the facts with respect to these transactions, and that neither the debtor nor plaintiffs had any knowledge of any of them until after the completion of the investigation made pursuant to the order of November 15, 1944, aforesaid.

The defendants assert that the claims alleged in the complaint are in essence claims for breaches of fiduciary duty and for waste of assets, and that consequently these claims are based on common law rights, state-created rights. The defendants seem to assume that these rights were created by the State of New York, and they argue that the law of the forum, in this case the law of New York, determines the applicable statutes of limitation. Their contention is that "statutes of limitation are part of the substantive law and are not merely matters of procedure", and that this court must apply the New York statutes, "not under any federal concepts of limitations, but in the manner in which the state court applies them". The defendants insist that all of the claims are barred by New York law, and hence are unenforceable here. They further argue that Section 11, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 29, sub. e, requires the plaintiffs to establish that when the reorganization petition was filed "the trustees inherited live claims, not already barred by limitations", as they assert these claims were, and that no new claims against the defendants arose with the filing of the reorganization petition.

This is an action to enforce rights which are cognizable only in equity, and it requires resort to the equitable remedy of an accounting. Jurisdiction to entertain

the action rests upon Section 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, which confers jurisdiction upon all district courts, as reorganization courts, to hear plenary suits brought by a reorganization trustee appointed by any reorganization court. Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718.

█ In the exercise of their equity jurisdiction, the federal courts "have not always held themselves bound to follow local statutes which, in ordinary circumstances, they could adopt and apply by analogy. In each case the refusal has been placed upon the ground of special equitable doctrines, making it inequitable to apply the statute. * * * Federal courts of equity have not considered themselves obligated to apply local statutes of limitations when they conflict with equitable principles, as where they apply, irrespective of the plaintiff's ignorance of his rights because of the fraud or inequitable conduct of the defendant". Russell v. Todd, 309 U.S. 280, 288, 60 S.Ct. 527, 531, 84 L.Ed. 754 (footnote). Federal equity courts have applied their "own rule of limitations through the doctrine of laches, the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." Russell v. Todd, supra, 309 U.S. at page 287, 60 S.Ct. at page 531, 84 L.Ed 754. This court is therefore free, in determining whether the claims sued upon were live claims at the time of the filing of the reorganization petition, to disregard the New York Statute of Limitations and to apply the rule of limitations which controls federal equity courts. It plainly appears from the pleadings that there has been no unreasonable delay by the plaintiffs in the institution of the action.

It follows from what has been said that the motions to dismiss on the ground that all of the claims are barred by the New York Statute of Limitations must be denied, unless Section 11, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 29, sub. e bars the maintenance of the action. That section provides that "A receiver or trustee may, within two years subsequent to the date of adjudication or within such further

period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankrutpcy."

█ No new causes of action against the defendants accrued when the reorganization petition was filed. Hastings v. H. M. Byllesby & Co. (Granbery), 293 N.Y. 413, 416, 417, 57 N.E.2d 737. And when plaintiffs were appointed trustees, title to the claims vested in them as of the date of the filing of the petition. Bankruptcy Act, §§ 186, 70, sub. a, 11 U.S.C.A. §§ 586, 110, sub. a. Section 11, sub. e requires that suits be instituted "within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit", but that provision presents no obstacle to the maintenance of this suit. For the purpose of the application of the provisions of Chapters I to VII, inclusive, of the Bankruptcy Act to proceedings under Chapter X, the date of adjudication shall be taken to be the date of approval of the reorganization petition. Thus, since the petition here was approved on February 27, 1942, and suit was not started until July 5, 1945, Section 11 sub. e, if applicable, by its explicit language seems to bar this suit. Section 11, sub. e, however, is a federal statute, and it has long been the rule that, where the suit seeks to obtain relief against a fraud, the bar of any applicable federal statute of limitation does not begin to run until the fraud is discovered or becomes known to the parties suing, or to those in privity with them. Bailey v. Glover, 21 Wall. 342, 22 L.Ed. 636. As stated by Mr. Justice Frankfurter in Holmberg v. Armbrecht, 327 U.S. 392, at page 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, 162 A.L.R. 719: "This equitable doctrine is read into every federal statute of limitation". In this case, plaintiffs instituted the action well within the two-year period following the discovery of the alleged frauds.

█ Aside from the reasons mentioned above, it is clear that the action should be tried, for until the facts are developed at a trial it will be impossible to de-

442

termine when and where the claims arose and whether the alleged domination and control of the defendant Williams was such as to have prevented the debtor from instituting action on the claims before the filing of the reorganization petition. See Michelsen v. Penney, 2 Cir., 135 F.2d 409, 415, 416. I think, too, that the different claims are sufficiently alleged to withstand the motions to dismiss for insufficiency.

The motions of the defendants are in all respects denied, without prejudice to renewal before the trial judge.